IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | |
|---|---|
| JAMES M. TRAINOR, | ) |
| | ) 1:20-CV-00260-RAL |
| Plaintiff | ) |
| | ) |
| vs. | ) RICHARD A. LANZILLO |
| | ) UNITED STATES MAGISTRATE JUDGE |
| SUPT. OVERMYER, ERIE INSURANCE | ) |
| COMPANY, RICHARD DIBELLA, DAVID | ) OPINION ON DEFENDANTS' MOTIONS |
| MAIER, C.O. JOHNSON, C.O. WADE, | ) TO DISMISS |
| C.O. LUTZ, C.O.YO-YO, LISA REEHER, | ) |
| | ) |
| | ) ECF NOS. 23, 25, 28 |
| Defendants | ) |
| | ) |

I.      Introduction

Plaintiff James M. Trainor, an inmate incarcerated at the State Correctional Institution at Forest (SCI-Forest), initiated this *pro se* civil rights action by filing a complaint in the Forest County Court of Common Pleas. *See* ECF No. 1. On September 4, 2020, Defendants removed this action to this Court. *Id*.

In his Complaint, Trainor asserts that various individuals violated his rights as secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution. ECF No. 1-2 at 7-8. He also asserts a state law claim for civil conspiracy and invokes state and federal wiretap statutes. *Id*. As Defendants, Trainor has named the Erie Insurance Company, attorney Richard Dibella, insurance investigator David Maier, and the following individuals employed by the Pennsylvania Department of Corrections: C.O. Johnson; C.O. Wade; C.O. Yo-Yo; C.O. Lutz; Lisa Reeher; and SCI-Forest Superintendent Overmyer. Trainor seeks compensatory, punitive, and statutory damages pursuant to 42 U.S.C. § 1983 and state and federal law. *Id*.

All Defendant have moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF Nos. 23, 25, 28.  Trainor has not responded to any of the motions.  Accordingly, this matter is ripe for disposition.[1]

II.      Factual Background

The following factual allegations from Trainor's complaint are accepted as true for purposes of the pending motions.  Sometime before the events underlying this action, Trainor filed a claim with his insurance company, Erie Insurance.  ECF No. 1-2 ¶ 9.  As part of the claims process, Erie Insurance directed an attorney, Dibella, to conduct Trainor's deposition.  *Id*. ¶ 10.  While coordinating that deposition, Dibella allegedly provided Reeher and Overmyer with unidentified "private and sensitive legal documentation" that should have been sent directly to Trainor.  *Id*. ¶ 12.

Trainor's deposition took place on November 12, 2018.  *Id*. ¶¶ 14-16.  In addition to Dibella and Maier, the deposition was attended by corrections officers Johnson, Wade, Lutz, and Yo-Yo.  *Id*. ¶ 15.  During the deposition, which lasted several hours, Trainor was asked and answered questions revealing "his personal social security information, private account numbers, account balances, family names and addresses, family history, financial history, settlement history, insurance coverage claim information, and confidential mental health and medical information."  *Id*. ¶ 16.  Trainor maintains that the divulgence of this "privileged, confidential and private" information in front of the corrections officers represented an invasion of his privacy in violation of the First, Fourth, and Fourteenth Amendments.  *Id*. ¶¶ 38-40.  In addition,

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

Trainor alleges that Maier utilized a laptop to make an audio recording of the entire deposition without Trainor's permission or consent and used "internet capabilities" to allow an unidentified third-party to over hear his deposition.  *Id*. ¶¶ 19-21.

Several months later, Trainor reviewed the transcript of the deposition and noticed that pages 86, 87, 88, 94, 95, and 96 were missing from the deposition transcript.  *Id*. ¶ 27.  Trainor suggests that Johnson and Wade stole them, along with his copies of the emails between Reeher and Dibella, from his property on April 29, 2019, while he was in the RHU.  *Id*. ¶ 29.  He also states that Dibella directed Reeher to have the documents seized.  *Id*. ¶ 31.  Trainor does not explain what the missing pages contained or why they were stolen.

Based on the foregoing, Trainor maintains that all Defendants violated his First Amendment right to free speech and his First, Fourth, and Fourteenth Amendment right to privacy.  Trainor avers that the presence of correctional officers at his deposition chilled his ability to speak freely, forced him to divulge private information about his personal business in front of prison staff, and led to joking and mockery from the prison's correctional officers concerning his private affairs.  *Id*. ¶¶ 32-34.  Trainor also suggests that this was done "to gain a strategic advantage" over him in settlement negotiations, compelling him to settle his claim for less than it was worth.  *Id*.  Trainor further contends that Defendants' conduct amounted to a civil conspiracy under state law and that Maier violated federal and state law wiretapping statutes by recording the deposition with his laptop.  *Id*. ¶¶ 37, 42-43.  *See* 19 U.S.C. § 2510 et seq.; 18 Pa. C.S.A. § 5703 et seq.

III.     Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)).  *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)).  In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions.  *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).  Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.  *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions disguised as factual allegations.  *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S.  at 286).  *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir.

2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burch v. Milberg Factors, Inc*., 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp*., 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Plaintiff is proceeding pro se, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

IV.     Analysis

1.   State actor requirement (Erie Insurance, Dibella, and Maier)

To prevail on a claim pursuant to 42 U.S.C. § 1983, a plaintiff must prove that each

defendant, acting under color of state law, deprived the plaintiff of a right secured by the

Constitution or laws of the United States.  *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d

Cir. 1995); 42 U.S.C. § 1983.  In other words, a plaintiff cannot state a viable § 1983 unless he

alleges the deprivation "of a federal constitutional or statutory right by a <u>state</u> <u>actor</u>."  *Kach v.*

*Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (emphasis added).  Private actors, on the other hand, "do

not act under color of state law" and thus "are not liable under Section 1983."  *Gerhart v. Energy*

*Transfer Partners, L.P.*, 2018 WL 6589586, at *9 (M.D. Pa. Dec. 14, 2018) (quoting *Luck v.*

*Mount Airy #1, LLC*, 901 F.Supp.2d 547, 560 (M.D. Pa. 2012)).

Trainor alleges that Dibella, Maier, and the Erie Insurance Company violated his First,

Fourth, and Fourteenth Amendment rights to free speech and privacy.  However, neither a

private insurance company, its employees, nor its attorneys are state actors.  *Angelico v. Lehigh*

*Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (attorneys are not considered state actors

"solely on the basis of their position as officers of the court"); *Breslin v. Morgenstern*, 2018 WL

4002857, at *3 (M.D. Pa. Aug. 22, 2018) (dismissing Section 1983 claims against a private

attorney where "all of the acts charged to [the attorney] are those which private attorneys

traditionally take in the course of representation in litigation.").  Nor does the investigation of a

private insurance claim by an insurer involve state activity.  *Leshko v. Servis*, 423 F.3d 37, 340

(3d Cir. 2005) (citing *Blum v. Yaretsky*, 457 U.S. 991 (1982) (holding state action to be present

only where the state provides "significant encouragement, either overt or covert" for the

activity)).  Because Dibella, Maier, and the Erie Insurance Company are not state actors, they are

not amenable to suit under § 1983 and the constitutional claims against them must be dismissed. *See*, *e.g.*, *Massey v. Crady*, 2018 WL 4328002, at *6 (W.D. Pa. Aug. 8, 2018) ("Private citizens, such as [defendants] are not state actors, and therefore . . . any § 1983 claims against [them] should be dismissed."); *Little v. Hammond*, 2016 WL 7324593, at *4 (W.D. Pa. Dec. 16, 2016) (same).

### 2.  Personal involvement (Reeher and Overmyer)

To prevail in a § 1983 action, the plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)).  This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009).  In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate.  *See*, *e.g.*, *Mearin v. Swartz*, 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation). These principles apply with equal force where the defendants are supervising prison officials. *See*, *e.g.*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (noting that liability for supervisory officials must still be based on "personal involvement in the alleged wrongs"); *Evancho*, 423 F.3d at 353 ("[L]iability cannot be predicated solely on the operation of respondeat superior.").  Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent

violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990).  Rather, a supervisor-defendant may only be liable for unconstitutional acts undertaken by subordinates if the supervisor either: (1) with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm; or (2) participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

In the instant case, Trainor's primary factual averments regarding Overmyer and Reeher are that they exchanged private communications with Dibella to assist with scheduling and arranging Trainor's deposition.  ECF No. 1-2 ¶¶ 11-12.  These actions do not amount to a constitutional violation.  Any other claims against them would necessarily be based on their supervisory roles in the prison system.  As described above, this type of averment is insufficient to establish personal involvement in the deprivation of a constitutional right.  Trainor's claims against Overmyer and Reeher must be dismissed on this basis.

    3.    Wiretapping (Counts VII and VIII)

Trainor next contends that Maier violated the Federal Wiretapping Act, 18 U.S.C. § 2510 et seq., and the Pennsylvania Wiretap Act, 18 Pa. C.S.A. § 5703 et seq., by recording his deposition on his laptop without permission.[2]  The Federal Wiretapping Act provides a private right action in favor of "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [the Act]."  18 U.S.C. § 2520(a).  A person violates the Act by "intentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] any

---

[2] Maier denies that he did so.

other person to intercept or endeavor to intercept . . . any wire, oral, or electronic communication.  *Id*. § 2511(a).  An oral communication is defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such exception."  *Id*. § 2510(2).

Critically, "[c]ase law interpreting the federal wiretap law . . . overwhelmingly supports the proposition that a plaintiff must have a reasonable expectation of privacy in the intercepted conversation itself."  *Miller v. Krusik*, 2009 WL 10718510, at *8 (M.D. Pa. Feb. 23, 2009) (collecting cases).[3]  Here, the allegedly intercepted communications took place during a recorded deposition, in the presence of representatives of an insurance company, for the purpose of resolving an active insurance claim.  Although Trainor denies that Maier had permission to record the deposition on his own laptop, he concedes that a stenographer was present, with the consent of all involved, for the express purpose of recording and transcribing the communications at issue.  Given that Trainor voluntarily participated in the proceeding with Maier present and consented to the presence of a stenographer to make a permanent record of the deposition, he cannot demonstrate that he had a reasonable expectation of privacy during that proceeding, at least as to those present.[4]  As such, his federal wiretap claim against Maier must be dismissed.  *See also Whitenight v. Elbel*, 2017 WL 8941221, at *9 (W.D. Pa. Apr. 10, 2017)

---

[3] Although it does not appear that the Court of Appeals for the Third Circuit has addressed the issue directly, Third Circuit precedent acknowledges the well-established proposition that Pennsylvania's version of the Wiretap Act requires the plaintiff to demonstrate a reasonable expectation of privacy.  *Kelly v. Borough of Carlisle*, 622 F.3d 248, 257 (3d Cir. 2010); *Peruto v. Roc Nation*, 385 F.Supp.3d 384 (E.D. Pa. June 12, 2019) (same).  The Circuit has also observed that the pertinent portions of the Pennsylvania wiretap statute and § 2511(a) "are substantially the same" and should be "interpreted in the same way."  *Walsh v. Krantz*, 386 Fed. Appx. 334, 340 (3d Cir. 2010).  Finally, it appears that at least seven other United States Courts of Appeals "have concluded that there must be a reasonable expectation of privacy in the conversation for a communication to fall within the purview of the [Federal Wiretap Act]."  *Miller*, 2009 WL 10718510, at *8 (collecting cases).  Given this "impressive string of appellate court precedent" and the apparent absence of caselaw to the contrary, this Court reaches the same conclusion.  *Id*.

[4] As will be discussed below, the Court reaches a different conclusion as to Trainor's claim that corrections officers later shared that information with their colleagues.

(noting that it is not unlawful for a person to intercept a communication where one of the parties has given prior consent) (citing 18 U.S.C. § 2511(2)(c)); *Vasko v. Twyford*, 2016 WL 3522038 (W.D. Pa. June 28, 2016) ("[T]he Wiretap Act is not violated when one party to a conversation consents to the interception.").

The same is true of Trainor's Pennsylvania's Wiretap Act claim.  As with the federal statute, Pennsylvania's Wiretap Act requires a claimant to demonstrate that the speaker "possessed a reasonable expectation of privacy in the conversation." *Agnew v. Dupler*, 717 A.2d 519, 523 (Pa. 1998).  With respect to Maier, Dibella, and Erie Insurance, Trainor did not have any such reasonable expectation.  His claim, accordingly, must be dismissed.

4.      Freedom of speech (Count I)

As noted above, a successful § 1983 plaintiff must ultimately prove that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States.  *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995); 42 U.S.C. § 1983.  Here, Trainor alleges that correctional officers were "placed in Plaintiff's private deposition to chill Plaintiff's exercise of free speech."  ECF No. 1-2 ¶ 32.  To prevail on this claim, Trainor "must show that the state sponsored action" – in this case, the presence of correctional officers – "had an objectively chilling effect on his freedom of expression, thereby deterring the exercise of plaintiff's First Amendment right."  *Sabatini v. Reinstein*, 2001 WL 872760, *3 (E.D. Pa. July 10, 2001) (citing S*terling v. Borough of Minersville*, 232 F.3d 190, 196-97 (3d Cir. 2000)); *Talley v. Mazzocca*, 796 Fed. Appx. 61, 63 (3d Cir. 2019) (plaintiff must demonstrate "that his claim rests on conduct that is expressive and that the First Amendment applies to it").

Trainor cannot satisfy this standard.  Although he alleges, in conclusory fashion, that the presence of prison guards somehow deterred him from speaking openly, he concedes that he voluntarily and fully participated in the deposition despite their presence.  Trainor does not allege that he was forced to curtail his answers or withhold critical or personal information; to the contrary, he admits in his pleading that he "was asked and answered questions revealing his personal social security information, private account numbers, account balances, family names and addresses, family history, financial history, settlement history, insurance coverage claim information, and confidential mental health and medical information."  ECF No. 1-2 ¶ 16 (emphasis added).  Under such circumstances, Trainor has failed to allege that he was "[either] compelled to speak [or] restrained from speaking in any conceivable manner."  *Talley*, 796 Fed. Appx. at 63 (affirming dismissal of First Amendment claim filed by prisoner based on his allegation that the Department of Corrections "gain[ed] for themselves an unfair advantage" in litigation by obtaining and using a prior settlement agreement and account information).

Even if Trainor could conceivably establish, contrary to his own representations, that the presence of officers chilled his speech in some manner, another impediment exists.  While "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," *Bell v. Wolfish*, 441 U.S. 520, 545 (1979), "the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates." *DeHart v. Horn*, 227 F.3d 47, 50-51 (3d Cir. 2000); *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) ("[T]he constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large.") (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  Thus, "inmates' First Amendment rights 'must in some respects be

limited in order to accommodate the demands of prison administration and to serve valid penological objectives.'" *Bell*, 441 U.S. at 515 (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

Apropos to the instant case, courts have consistently held that states "ha[ve] a legitimate penological interest in maintaining order and security within the prison system." *Fraise v. Terhune*, 283 F.3d 506, 516 (3d Cir. 2002). Assigning correctional officers to provide security during inmate interactions with the public falls squarely within this purview. Trainor has not cited any caselaw suggesting that the presence of correctional officers during a civil deposition is an unnecessary or excessive precaution that lacks a reasonable penological basis. *DeHart*, 227 F.3d at 50-51 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Consequently, his claim must fail.

5.    Invasion of privacy – federal law (Counts III, IV, and V)

Citing the First, Fourth, and Fourteenth Amendments, Trainor next alleges that Defendants violated his constitutional right to privacy during and after his deposition. Because Dibella, Maier, and Erie Insurance are not state actors, this claim applies only to the corrections officers: Johnson, Wade, Yo-Yo, and Lutz. Trainor alleges that each of these Defendants overheard personal and sensitive information during his deposition – including confidential and sensitive information about his mental and physical health – and then shared that information widely with their colleagues, resulting in joking, teasing, scolding, mocking, and harassment from other correctional officers concerning Trainor's private affairs. ECF No. 1-2 ¶ 34.

"The United States Constitution does not mention an explicit right to privacy and the United States Supreme Court has never proclaimed that such a generalized right exists." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 178 (3d Cir. 2005). "The Supreme Court has, however,

found certain 'zones of privacy' in the amendments to the Constitution." *Id*.  These zones of privacy have provided the basis for two privacy interests protected under the Fourteenth Amendment.  *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011).  One of these – an individual's "interest in avoiding disclosure of personal matters" – is potentially implicated here. *Id*. (quoting *C.N.*, 430 F.3d at 178).

The right not to have intimate facts concerning one's life disclosed without one's consent "is a venerable [right] whose constitutional significance [has been] recognized in the past." *C.N.*, 430 F.3d at 179 (internal quotations and quoting source omitted).  While this right is not absolute, it can be typically be overcome only by a government interest in disclosure that is "genuine, legitimate and compelling."  *Sterling v. Borough of Minersville*, 232 F.3d 190, 196 (3d Cir. 2000).  In making this determination, the Court of Appeals for the Third Circuit has directed courts to consider whether the disclosed information "is within an individual's reasonable expectations of confidentiality.  The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny."  *C.N.*, 430 F.3d at 179 (quoting *Fraternal Order of Police v. City of Philadelphia*, 812 F.2d 105, 112 (3d Cir. 1987)).

Here, Trainor has adequately pleaded that the Defendant correctional officers unnecessarily disclosed information about sensitive medical, mental health, and financial matters with other staff members at the prison.  Trainor has a constitutionally recognized privacy interest in such intimate matters, and he had a reasonable expectation that such matters would not be shared beyond those present at his deposition (except as necessary to facilitate the resolution of his insurance claim).  *Sterling*, 232 F.3d at 195 (acknowledging that "private medical information is 'well within the ambit of material entitled to privacy protection,' in part because it concerns intimate facts of a personal nature.") (quoting *United States v. Westinghouse Elec.*

*Corp.*, 638 F.2d 570, 577 (3d Cir.1980)).  At this stage in the proceedings, Trainor's allegations

are sufficient to move forward against Johnson, Wade, Yo-Yo, and Lutz.

The Court notes, however, that only Trainor's Fourteenth Amendment claim may

proceed.  Trainor cannot sustain a Fourth Amendment claim because he has not alleged an illegal

search or seizure, and the First Amendment's guarantee of privacy is generally understood to

refer to freedom of private association, a circumstance inapplicable to Trainor's claims.  To the

extent that Trainor asserts distinct invasion of privacy claims under the First and Fourth

Amendments, those claims are dismissed

6.      Invasion of privacy – state law (Count VI)

In addition to his federal claims, Trainor asserts an invasion of privacy claim under state

tort law.  Pennsylvania's courts have recognized four invasion of privacy torts, only one of

which is implicated here: the right to avoid having "unreasonable publicity given to another's

private life."  *McMahon v. Penn. Dep't of Public Welfare*, 847 F.Supp.2d 734, 750 (E.D. Pa.

2012) (citing *Burger v. Blair Med. Associates, Inc*., 964 A.2d 374, 376 (Pa. 2009)).  To establish

such a claim, Trainor must allege: "(1) publicity, given to (2) private facts, (3) which would be

highly offensive to a reasonable person and (4) [are] not of legitimate concern to the public."

*Harris by Harris v. Easton Publishing Co*., 483 A.2d 1377, 1384 (Pa. 1984).

With respect to any alleged invasion of privacy that took place during the November 14,

2018 deposition – such as, for example, Trainor's claim that Maier broadcast his deposition to an

unknown third party – Trainor's claim is time-barred.  The statute of limitations for an invasion

of privacy claim in Pennsylvania is one year.  *See* 42 Pa. C.S.A. § 5523; *Ghrist v. CBS

Broadcasting, Inc*., 40 F.Supp.3d 623, 627 (W.D. Pa. 2014) ("Pennsylvania, by statute, sets the

statute of limitations for all claims sounding in defamation or invasion of privacy at one year.").

Plaintiff did not initiate this action until August 3, 2020, almost two years later.  To the extent that any invasion of privacy allegedly took place during his deposition, that claim must be dismissed.

As discussed above, Trainor also alleges that Johnson, Wade, Yo-Yo, and Lutz invaded his privacy at some point <u>after</u> the deposition by disclosing his personal information to their co-workers.  Because Trainor does not provide a timeframe for these disclosures, it is unclear from the face of the complaint whether his allegations are timely.  Nevertheless, it is well-established that employees of the Commonwealth of Pennsylvania acting within the scope of their duties enjoy sovereign immunity from most state-law tort claims.  *Walton v. Harkleroad*, 2016 WL 11480713, at *7 (W.D. Pa. Mar. 3, 2016) (citing 1 Pa. C.S. § 2310).  The doctrine of sovereign immunity provides state officials with broad immunity from most state-law tort claims, "except as the General Assembly shall specifically waive the immunity."  1 Pa. C.S. § 2310.  Although the Pennsylvania General Assembly "has waived sovereign immunity for claims of negligence against Commonwealth employees in a very limited and express set of circumstances," it has not done so for intentional torts.  *Id.* (citing 42 Pa.C.S. § 8522(b)).  *Kull v. Guisse*, 81 A.3d 148, 157 (Pa. Comm. Ct. 2013) ("[S]tate employees do not lose their immunity for intentional torts, provided they are acting within the scope of their employment.") (citations omitted, emphasis added).  Consequently, sovereign immunity "shields Commonwealth employees from liability when their actions: (1) cannot fit into one of the . . . statutory exceptions in § 8522; (2) are not negligent; and (3) occurred when acting within the scope of his or her employment."  *Tibbens v. Snyder*, 2020 WL 5372097, at *5 (M.D. Pa. June 24, 2020) (citing *Kintzel v. Kleeman*, 965 F.Supp.2d 601, 606 (M.D. Pa. 2013)).

Because invasion of privacy is an intentional tort that does not fall within the enumerated exceptions,[5] Trainor's invasion of privacy claim against Johnson, Wade, Yo-Yo, and Lutz is barred by the doctrine of sovereign immunity.  When coupled with the untimeliness of his allegations against the non-state Defendants, Trainor's entire state law invasion of privacy claim must be dismissed.

> 7.      Conspiracy (Count II)

Trainor's final claim alleges that all Defendants participated in a conspiracy under Pennsylvania law to deprive him of his constitutional rights.  As noted above, this state-law tort claim, at least as to Johnson, Wade, Yo-Yo, and Lutz, is barred by the doctrine of sovereign immunity.  More critically, Trainor has failed to state a plausible claim for relief.

"The sufficiency of a claim for civil conspiracy under state law, brought in federal court, is governed by the Federal Rules of Civil Procedure." *Adams v. Teamsters Local 115*, 214 Fed. Appx. 167, 176 (3d Cir. 2007).  Applying the pleading standards set forth in *Iqbal* and *Twombly*, the Court of Appeals for the Third Circuit has repeatedly acknowledged that "mere conclusory allegations of deprivations of constitutional rights are insufficient to state a conspiracy claim." *Tindell v. Beard*, 351 Fed. Appx. 591, 594 (3d Cir. 2009).  Rather, the plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. The Supreme Court of the State of New Jersey*, 588 F.3d 180, 184-85 (3d Cir. 2009).

The lone allegation of conspiracy in Trainor's complaint is that "C.O. Johnson and C.O. Wade were placed in Plaintiff's private deposition to chill Plaintiff's exercise of free speech" as

---

[5] Those exceptions are: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse of a minor. 42 Pa. C.S.A. § 8522.

part of a "joint-conspiracy to uncover private information about Plaintiff's affairs and to gain a strategic advantage over the Plaintiff in settlement negotiations." ECF No. 1-2 ¶ 32. There is nothing in his pleading, however, from which a reasonable factfinder might infer that Defendants formulated and executed an agreement to violate his constitutional rights. *Carey v. Johnson*, 2008 WL 724101, at *10 (W.D. Pa. Mar. 17, 2008). The law is clear: "bare allegations of wrongdoing by a Defendant, without any substantiating proof of an unlawful agreement, are insufficient to state a conspiracy claim." *Id*. (emphasis added). Such is the case here.

V.      Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp*., 293 F.3d 103, 108 (3d Cir. 2002). This instruction is equally applicable to *pro se* litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

In this case, any attempt to amend would be futile. Several of Trainor's claims are barred by sovereign immunity, others seek relief pursuant to § 1983 from individuals who are not state actors, and the deficiencies in his remaining claims are uncurable through factual amendment.

VI.     Conclusion

For the reasons stated herein:

> 1.   The motion to dismiss filed by Defendants Erie Insurance Company and David Maier [ECF No. 23] is GRANTED. All claims against Defendants Erie Insurance and Maier are dismissed, with prejudice, and the Clerk of the Court is directed to terminate them as Defendants in this action.

2.  The motion to dismiss filed by Defendant Richard Dibella [ECF No. 25] is GRANTED.  All claims against Defendant Dibella are dismissed, with prejudice, and the Clerk of the Court is directed to terminate Dibella as a Defendant in this action.

3.  The motion to dismiss filed by the DOC Defendants [ECF No. 28] is GRANTED as to Defendants Reeher and Overmeyer.  All claims against Defendants Reeher and Overmyer are dismissed, with prejudice, and the Clerk of the Court is directed to terminate Reeher and Overmyer as Defendants in this action.

4.  The motion to dismiss filed by the DOC Defendants [ECF No. 28] is GRANTED IN PART and DENIED IN PART as to Defendants Johnson, Lutz, Wade, and Yo-Yo.  The motion is GRANTED as to the claims set forth in Counts I, II, III, IV and VI and DENIED as to the Fourteenth Amendment invasion of privacy claim set forth in Count V.

An appropriate order will follow.

DATED this 6th day of December, 2021.

BY THE COURT:

_____
RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE

18